UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID PATTERSON,<br>Plaintiff | : | No. 4:11-cv-497 |
| | : | |
| v. | : | (Judge Nealon) |
| | : | |
| J. POTOPE, et al.,<br>Defendants | : | |

FILED
SCRANTON

MAR 2 8 2013

PER _____
DEPUTY CLERK

## MEMORANDUM

On March 16, 2011, Plaintiff, David Patterson, an inmate formerly confined[1] in the

Allenwood United States Penitentiary ("USP-Allenwood") in White Deer, Pennsylvania, filed

the above-captioned action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S.

388 (1971)[2], alleging that Defendants were deliberately indifferent to a pre-existing medical

condition he suffered regarding his foot and violated his rights under the Americans With

Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Doc. 1). On March 12, 2012, with

permission of this Court, Plaintiff filed an amended complaint adding a claim under the Federal

Tort Claims Act ("FTCA"). (Doc. 49). Presently pending is Defendants' motion to dismiss and

for summary judgment. (Doc. 57). For the reasons set forth below, the motion will be granted.

## Background

The original complaint named the following Defendants: James Potope, Assistant Health

Services Administrator; Julie A. Nicklin, Associate Warden; Jay K. Miller, Medical Doctor;

Jennifer Holtzapple, Charles P. Craig, and Jody Bennett-Meehan, Physician's Assistants; Bruce

---

1. Plaintiff is currently housed at the Federal Correctional Complex in Terre Haute, Indiana.

2. A Bivens-type action is "a judicially created remedy allowing individuals to seek damages for
unconstitutional conduct by federal officials." See Banks v. Roberts, 251 Fed. Appx. 774, 775
n.1 (3d Cir. 2007).

Buschman, Medical Officer; Harley Lappin, Former Bureau of Prisons Director; Elizabete M.

Santos, Medical Doctor; and the United States of America. (Doc. 1). Plaintiff alleged that

Defendants refused to provide him with proper treatment and recommended surgery for a pre-

existing foot injury. (Id. at pp. 3-17). He claimed violations of the ADA and Eighth

Amendment. (Id.). Specifically, Plaintiff alleged the deliberate indifference of Defendant

Buschman by failing to intervene in the treatment provided by the other medical defendants 'in

the face of resulting pain and risk of permanent injury' and of Defendants Potope, Holtzapple,

Bennett-Meehan, Craig, and Buschman by depriving him of an examination by an orthopedic

surgeon. (Id. at pp. 17-18). Plaintiff complained that his job assignment in the Food Services

department amounted to cruel and unusual punishment and violated the ADA because his

medical condition should have precluded him from working in such conditions and because he

was denied safety boots. (Id. at pp. 18-20). The original complaint claimed that Plaintiff was

retaliated against, for filing a grievance regarding his injury while on his job assignment, by

being fired from his job instead of being provided a safer work environment. (Id. at pp. 21-23).

Plaintiff also alleged that he was issued retaliatory incident reports, which were later thrown out,

and was given other inappropriate job assignments for filing grievance complaints about his

medical care. (Id.).

On August 18, 2011, Plaintiff filed a motion for leave to amend his complaint to raise an

FTCA claim. (Doc. 21). On September 6, 2011, Defendants filed a motion to dismiss and

motion for summary judgment. (Doc. 23). Plaintiff filed a motion to supplement his complaint

on November 3, 2011. (Doc. 39). On February 24, 2012, this Court conditionally granted

Plaintiff's motions and directed him to file an amended complaint. (Doc. 47). On March 12,

2012, Plaintiff filed an amended complaint. (Doc. 49). Defendants' first motion to dismiss and for summary judgment was thereafter dismissed as moot. (Doc. 51).

The amended complaint renames the original Defendants and adds two (2) parties: the United States Public Health Service Physicians ("PHSP"), a corporation contracted with the Department of Corrections to provide medical care to inmates, and James Schaffer, Assistant Food Services Administrator. (Doc. 49). First, Plaintiff alleges deliberate indifference to his medical needs by Defendants Buschman and Potope for refusing to allow him to see a specialist even though the treatment he had been receiving for two (2) years was inadequate. (Doc. 49, pp. 31-36). Plaintiff alleges that Defendants insisted that he wear a leg brace despite the fact that it had no benefit and only increased his pain. (Id.). Plaintiff alleges that Defendant Craig concealed prior consultations with orthopedic surgeons. (Id. at p. 36). The amended complaint alleges that PHSP has a policy of denying surgical treatment if it is expensive. (Id. at p. 32).

Second, the amended complaint raises a negligence claim. (Doc. 49, p. 37). Plaintiff alleges that Defendant United States has a policy at USP-Allenwood requiring Food Services workers to wear safety-toed shoes unless an inmate has medically approved soft shoes. (Id.). Plaintiff alleges that Defendant PHSP wrongfully cleared Plaintiff for Food Services work without clearance from the chief medical officer. (Id.). The amended complaint alleges that Defendants United States and Schaffer, along with two other non-defendant kitchen supervisors[3],

---

3. The amended complaint mentions Livengood and Stackhouse, but does not identify either as a Defendant. See (Doc. 49, pp. 3-5); Allen v. AMTRAK, 2004 U.S. Dist. LEXIS 24846, *10 (E.D. Pa. 2004) ("Rule 10(a) of the Federal Rules of Civil Procedure requires every complaint to include the name of each party to the action."). The original complaint also failed to identify either individual as a Defendant, see (Doc. 1, pp. 1-3), and Plaintiff did not seek nor obtain this Court's permission to add them as parties, see (Docs. 21, 39-40, 47). Regardless, for the reasons discussed herein, Plaintiff's retaliation claim will be dismissed.

failed to protect Plaintiff by allowing him to work without medical soft shoes which resulted in injury. (Id. at pp. 37-38).

Repeating many of his deliberate indifference allegations, Plaintiff claims that Defendant PHSP and the URC Committee[4] were negligent by failing to provide proper medical care and/or failing to correct harmful treatment. (Doc. 49, p. 38). Plaintiff claims that the negligence of Defendant PHSP amounted to medical malpractice and the only remedy against it is through the FTCA. (Id. at p. 39). The amended complaint alleges that Defendant Buschman should not have been making treatment decisions requiring a specialist's attention. (Id.). Plaintiff asks the Court to allow the recommendation of orthopedic surgeon Dr. Ball to act as a Certificate of Merit ("COM") because Plaintiff's confinement precludes him from obtaining a COM from an outside doctor. (Id. at pp. 39-40).

Next, Plaintiff claims that in retaliation for filing a grievance for the injury he suffered while working in the kitchen, he was fired from this job. (Doc. 49, pp. 40-41) (alleging that, instead, the unsafe conditions should have been corrected). Liberally construed, the amended complaint seeks to hold Defendants Schaffer, Potope, and Craig liable for this conduct. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that pro se complaints should be liberally construed); see also (Doc. 70, pp. 4-5). After Plaintiff filed this grievance, and other grievances for improper medical care, Defendant Potope allegedly threatened Plaintiff and filed a false incident report against him, which was dismissed. (Id. at p. 42). The amended complaint alleges that Defendant Holtzapple retaliated by "cussing out" Plaintiff and telling Plaintiff he could

---

4. The URC Committee consisted of Defendants Buschman, Miller, Potope, Bennett-Meehan, Craig, Holtzapple, Santos, and Nicklin. (Doc. 49, p. 22).

4

suffer until he gets out of prison. (Id.). Plaintiff alleges that the prison's refusal, on behalf of Defendant United States, to protect him resulted in systematic retaliation in violation of the First Amendment. (Id. at p. 43).

Lastly, the amended complaint alleges a claim for breach of duty to protect by Defendants Buschman, Potope, and Craig based on the same conduct giving rise to Plaintiff's deliberate indifference claim. (Doc. 49, p. 43). Plaintiff alleges that Defendant PHSP and the URC Committee breached their duty to protect by denying him access to a physician capable of properly diagnosing and treating his condition. (Id. at p. 44). Plaintiff claims that Defendant Schaffer failed in his duty to protect by not enforcing prison policy regarding safety shoes in the kitchen. (Id.).

Plaintiff requests declaratory and injunctive relief, as well as compensatory damages. (Doc. 49, p. 46).

On May 29, 2012, Defendants filed a motion to dismiss and for summary judgment. (Doc. 57). On June 21, 2012, Defendants filed a brief in support of their motion and a statement of facts. (Docs. 66-67). Defendants argue: (1) Defendants Miller, Santos, Nicklin, Lappin, Holtzapple, Craig, Bennett-Meehan, and Schaffer are entitled to sovereign immunity to the extent they are sued in their official capacities; (2) Plaintiff failed to exhaust his retaliation claim against Defendant Potope; (3) Defendant Buschman was not deliberately indifferent to Plaintiff's serious medical needs; (4) Defendants Bennett-Meehan and Craig are entitled to statutory immunity; (5) Plaintiff's retaliation claim against Defendant Potope fails to state a claim upon which relief may be granted; (6) Defendants are entitled to qualified immunity; (7) Plaintiff failed to exhaust his administrative tort remedies against the United States; and (8) Plaintiff did not file the requisite

COM. (Doc. 67, pp. 10-11). Plaintiff filed a brief in opposition on July 2, 2012. (Doc. 70). A reply brief was filed by Defendants on July 16, 2012. (Doc. 74).

**Standards of Review**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)); see also 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id.; FED. R. CIV. P. 8(a)(2).

Additionally, where an in forma pauperis plaintiff complains about prison conditions, the

6

screening provisions of 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e apply. Importantly, "[t]he court's obligation to dismiss a complaint under the PLRA [Prison Litigation Reform Act] screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss." Stanley v. Wenerowicz, 2013 U.S. Dist. LEXIS 30005, *4 (M.D. Pa. 2013) (Nealon, J.) (citing Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000)). Accordingly, if there is a basis for dismissal that was not relied upon by a defendant in a motion to dismiss, the court may sua sponte rest its dismissal upon such a ground pursuant to the screening provisions of the PLRA. Id.; McCabe v. Pa. Dep't of Corr., 2012 U.S. Dist. LEXIS 172690, *23-24 n.5 (M.D. Pa. 2012).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celetox, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 U.S. Dist. LEXIS 21277, *5-6 (M.D. Pa. 2011) (Jones, J.) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

**Facts**

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the

fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1 (explaining that the "papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement").

Here, Defendants filed a ninety-eight (98) page statement of material facts containing 762 individually numbered paragraphs. (Doc. 66). Plaintiff filed a brief in opposition to the motion to dismiss and for summary judgment, (Doc. 70), but he did not file an opposing statement of facts. Nevertheless, his opposing brief includes many factual declarations challenging specific statements of facts by Defendants. (Id.). Because Plaintiff is proceeding pro se, this Court will liberally construe his brief to also include an opposing statement of facts. See Iseley v. Beard, 2009 U.S. Dist. LEXIS 90485, *25 (M.D. Pa. 2009) (Kane, J.) (construing the plaintiff's declarations to include his opposing statement of facts), citing Haines, 404 U.S. 520-21; Bynum v. Thiroway, 2008 U.S. Dist. LEXIS 52983, *7 (M.D. Pa. 2008) (Vanaskie, J.) (liberally construing the portion of the plaintiff's brief in opposition to the motion for summary judgment that clearly set forth challenges to specific statements of fact to be the plaintiff's opposing statement of material facts). This Court has reviewed the lengthy record[5] and has found the following:

---

5. Defendants submitted more than six hundred pages of exhibits. See (Doc. 66). However, it is clear from the medical records referring to other medical encounters that there are additional medical records that were not submitted to this Court.

In May, 2004, prior to his incarceration, Plaintiff suffered a gunshot wound to his abdomen and spine resulting in loss of function to his right lower extremity. (Doc. 49, p. 7); (Doc. 66-2, p. 25). This injury caused Plaintiff's Achilles tendon to retract and ongoing medical problems. (Id.). In 2006, Plaintiff was sentenced to a term of imprisonment of 480 months. (Doc. 49, p. 8); (Doc. 66-1, p. 14). Over the next several years, the medical staff at several federal prisons reached different diagnoses and proscribed various treatments for Plaintiff's injured foot, including medical shoes and a brace. (Doc. 49, pp. 8-11); (Doc. 66-1, pp. 41-42); (Doc. 66-2, pp. 25-27).

On or about January 28, 2010, Plaintiff was transferred to USP-Allenwood. (Doc. 49, p. 11); (Doc. 66-1, p. 2).

Less than two months after Plaintiff's arrival at USP- Allenwood, Defendant Craig requested orthotics "make special shoes" for Plaintiff because the shoes he had were causing blisters. (Doc. 66-2, p. 25).

On March 23, 2010, Plaintiff slipped and fell while working at his Food Services job in the prison and sustained injuries. (Doc. 66, pp. 18-19); (Doc. 66-15, pp. 20-24). He was treated by Defendant Bennett-Meehan a few hours later for reports of back pain and pain to his finger, given pain medication, and advised to apply hot/cold packs to his back. (Doc. 66-1, pp. 39-40).

On March 24, 2010, Plaintiff filed an informal resolution form regarding his work-related injury. (Doc. 66, pp. 18-19); (Doc. 66-15, pp. 20-24).

On April 29, 2010, Plaintiff was terminated from his work assignment in Food Services. (Doc. 49, p. 52); (Doc. 66-2, p. 13).

On May 13, 2010, Plaintiff was seen by Defendant Craig and discussed blood pressure

medication. (Doc. 66-2, p. 30).[6] Defendant Craig noted that Plaintiff was waiting for his special shoes. (Id.).

On July 30, 2010, Defendant Buschman treated Plaintiff in the Special Housing Unit, noting that Plaintiff received new blood pressure medication the previous day. (Doc. 66-2, p. 29). Defendant Buschman discussed Plaintiff's visit with an orthotics specialist on July 28, 2010, and advised that he would have to wait for the report before any surgical procedures, if recommended, would be approved. (Id.). Defendant notes that Plaintiff was also seen by orthotics in May and that he had casts taken to make a brace to support his foot. (Id.). Defendant Buschman opined that Plaintiff would be better served by orthotics and that they had not had a chance to try the brace. (Id.).

On August 6, 2010, Plaintiff told Defendant Buschman that the brace would not work and that he needed an orthopedic surgery consult. (Doc. 66-2, p. 28). Defendant Buschman put the request in, but explained that Plaintiff would probably need to wait until they tried the orthotic device. (Id.).

Sometime before September 30, 2010, Plaintiff received his medical shoes and leg brace. (Doc. 66-2, p. 19).

On November 2, 2010, Susquehanna Valley Prosthetics & Orthotics ("SVPO") examined Plaintiff to make adjustments to his leg brace because he complained of pain. (Doc. 66-2, p. 31).

On November 30, 2010, SVPO returned the brace to Plaintiff. (Doc. 66-2, p. 32). Plaintiff was told he had to wear the brace and that if it hurt, to sign up for sick call. (Id.).

---

6. The medical records reflect other clinic visits for blood pressure checks and other treatment not specifically related to Plaintiff's foot problems, which are not mentioned herein. See e.g. (Doc. 66-4, p. 17).

On December 3, 2010, Plaintiff was seen in the clinic because the brace was painful. (Doc. 66-2, pp. 33, 35). Defendant Craig issued extra padding to place over his ankle and put in a consult request with orthotics. (Id.).

On December 7, 8, and 10, 2010, Plaintiff was treated in the clinic because his brace was hurting and causing lesions and/or swelling. (Doc. 66-2, pp. 36-40).

On December 14, 2010, Defendants Holtzapple and Buschman evaluated Plaintiff's medical records and requested an orthopedic surgery consult because Plaintiff had been trying the brace for six months and was continuing to get sores. (Doc. 66-2, p. 41).

On December 21, 2010, Defendant Holtzapple made a consult request for Plaintiff to have an orthopedic surgery evaluation. (Doc. 66-4, p. 37).

On January 13, 2011, SVPO was at the prison to adjust Plaintiff's brace, but after speaking with Plaintiff, decided not to take the brace in light of Plaintiff's continued resistance to its use. (Doc. 66-4, p. 19).

On January 18, 2011, Plaintiff was treated in the clinic for foot pain and a calloused area that had started bleeding. (Doc. 66-4, pp. 25-33). Defendant Holtzapple noted that Plaintiff was waiting to see ortho because his brace was not working. (Id.).

On January 19, 2011, Plaintiff was again treated in the clinic for the callous on his toe. (Doc. 66-4, pp. 34-36).

On January 26, 2011, Dr. Ball, a private orthopedic surgeon, examined Plaintiff and recommend tendon lengthening surgery. (Doc. 66-4, p. 37).

On February 2, 2011, Defendant Holtzapple made a surgery consult based on Dr. Ball's examination. (Doc. 66-4, p. 39).

On February 8, 2011, Plaintiff was seen in the clinic for a blister on his toe. (Doc. 66-4, p. 41).

On February 11, 2011, Plaintiff was again seen in the clinic for the blister on his toe, and because it was not healing, Defendant Holtzapple put in a radiology request. (Doc. 66-4, pp. 43-45). The radiology report was normal but for toe osseous abnormality. (Doc. 66-4, p. 49).

On February 28, 2011, Plaintiff was seen in the clinic and his bleeding toe was treated. (Doc. 66-5, pp. 1-3).

On March 1, 2011, Plaintiff was treated twice in the clinic for his blister and provided ten dressing changes. (Doc. 66-5, pp. 4-11). Defendant Holtzapple noted that they were waiting for region approval for surgery. (Id.).

On March 2, 2011, Plaintiff showed up after sick-call demanding to be seen, claiming his sick-call was denied. (Doc. 66-5, p. 14). Defendant Potope notes that Plaintiff gave inconsistent accounts of what happened and when questioned why he needed to be seen when he had been provided ten dressing changes the previous day, Plaintiff claimed he need a wheelchair. (Id.). Defendant Potope opined that Plaintiff walked from the housing unit without difficulty and had no medical need for a wheelchair. (Id.).

On March 4, 2011, Plaintiff was treated in the clinic and given additional gauze for dressing changes. (Doc. 66-5, p. 15).

On March 10, 2011, Defendant Holtzapple noted that Plaintiff was having surgery and needed blood work, which was taken on March 14, 2011. (Doc. 66-5, pp. 18, 22-23).

On March 11, 2011, Plaintiff's toe was treated in the clinic. (Doc. 66-5, pp. 20-21).

On March 16, 2011, the complaint in the instant action was filed. (Doc. 1).

13

On March 18, 2011, Plaintiff had tendon lengthening surgery, performed by Dr. Ball. (Doc. 66-5, pp. 24-27).

Plaintiff had follow-up appointments on March 18, 2011, and April 5, 2011, when Dr. Ball removed his cast. (Doc. 66-12, p. 40).

On April 5, 2011, Plaintiff was seen in ortho clinic and a request for physical therapy was made by Defendant Holtzapple. (Doc. 66-12, pp. 30, 39, 46).

Plaintiff had physical therapy on April 7, 2011. (Doc. 66-12, p. 31).

Plaintiff was seen in the clinic on April 8, 2011, April 11, 2011, and April 25, 2011. (Doc. 66-9, pp. 32-42).

On May 4, 2011, Plaintiff was seen in the clinic and provided the requested leg stockings. (Doc. 66-9, pp. 28-29). He requested physical therapy three times a week, but was advised that part of the idea of meeting with physical therapy staff was to be given exercises to do on his own. (Id.).

On May 5, 2011, Plaintiff had physical therapy. (Doc. 66-9, p. 27).

On June 13, 2011, Plaintiff was treated in the clinic for a blister on his toe. (Doc. 66-9, pp. 24-25). He complained about not having had physical therapy in two months, but was reminded that he had physical therapy in May and was scheduled for another visit in June. (Id.).

On June 17, 2011, Plaintiff was seen by physical therapy. (Doc. 66-9, pp. 20-21). He was examined for foot pain because he reported to have fallen about three days prior. (Doc. 66-12, p. 26).

On June 22, 2011, Plaintiff was given medical soft shoes with a higher toe box. (Doc. 66-9, p. 18).

On July 14, 2011, Plaintiff was treated by Defendant Buschman. (Doc. 66-9, pp. 10-13). Plaintiff asked to be transferred to a medical center for more intensive physical therapy but Defendant Buschman, after reviewing Dr. Ball's notes, explained that it had not been recommended. (Id.). Notably, Plaintiff also expressed concern that he was doing too much physical therapy because it was painful on his toenail, which was coming off. (Id.).

On July 20, 2011, Plaintiff had physical therapy. (Doc. 66-9, p. 6). He was also seen in the clinic because his toe nail fell off, which Plaintiff does not recall happening. (Doc. 66-9, pp. 5, 7-8).

On July 25, 2011, Plaintiff was treated in the clinic because his toe was bleeding. (Doc. 66-9, p. 2).

On July 26, 2011, Plaintiff had physical therapy. (Doc. 66-12, p. 15).

On July 28, 2011, Plaintiff was given antibiotics for an abscess of foot. (Doc. 66-9, p. 1).

On July 29, 2011, August 1, 2011, August 9, 2011, and August 12, 2011, Plaintiff had follow-up evaluations at the clinic for his foot. (Doc. 66-8, pp. 41-50).

On August 19, 2011, Plaintiff, whose foot was improving, was again seen at the clinic and given new stockings. (Doc. 66-8, pp. 38-39).

On August 22, 2011, Plaintiff was seen in the clinic requesting new shoes. (Doc. 66-8, p. 34). He was advised to let his foot heal for thirty (30) days. (Id.).

On August 23, 2011, Dr. Ball examined Plaintiff and recommended an evaluation for general surgery. (Doc. 66-12, p. 14). Defendant Holtzapple reviewed Dr. Ball's note and made a general surgery consult request. (Doc. 66-8, pp. 30-33).

On August 24, 2011, Plaintiff had physical therapy. (Doc. 66-12, p. 15).

On August 31, 2011, the URC Committee approved the request for a surgical evaluation. (Doc. 66-12, p. 13).

On September 2, 2011, Plaintiff was taken for a bone scan. (Doc. 66-8, p. 23).

On September 8, 2011, Plaintiff's antibiotic was restarted. (Doc. 66-8, p. 22).

On September 13, 2011, Plaintiff was taken to Dr. Albright, an outside podiatrist, who recommended an MRI. (Doc. 66-8, p. 19); (Doc. 66-12, pp. 8-9). The consult request was made by Defendant Holtzapple on September 15, 2011, (Doc. 66-8, p. 18), and approved by the URC Committee on September 21, 2011, (Doc. 66-12, p. 7).

On September 30, 2011, Defendant Buschman spoke with Dr. Albright about the MRI and the need for additional scans, which were ordered. (Doc. 66-8, p. 10); (Doc. 66-12, p. 5).

On October 3, 2011, Plaintiff was treated in the clinic. (Doc. 66-8, p. 4).

On October 25, 2011, Plaintiff saw Dr. Ball. (Doc. 66-11, p. 50). Dr. Ball determined that Plaintiff's ulcer was healing, that he should have a physical therapy consult for range of movement, and wanted to see him again in four months. (Id.).

On October 28, 2011, Plaintiff was treated in the clinic and given pain medication. (Doc. 66-7, p. 39).

On November 2, 2011, the URC Committee approved the request for a physical therapy evaluation. (Doc. 66-11, p. 44).

On November 3, 2011, Plaintiff was examined by Dr. Albright. (Doc. 11, p. 41). He determined that the ulcer was healing and recommended that Plaintiff use a surgical shoe to walk and daily wound care. (Id.). Upon his return to the prison, Plaintiff was also seen in the clinic. (Doc. 66-7, p. 34).

16

On November 18, 2011, Plaintiff was again evaluated by Dr. Albright. (Doc. 66-11, p. 37). He continued his recommendations and also suggested that aggressive physical therapy may be helpful. (Id.). Plaintiff was seen at the clinic the same day. (Doc. 66-7, p. 30).

On November 21, 2011, Plaintiff was seen in the clinic. (Doc. 66-7, p. 29). Defendant Holtzapple reviewed Dr. Albright's report but was uncertain about Dr. Albright's recommendation for physical therapy given that Plaintiff had already been discharged from therapy. (Id.). Defendant Holtzapple therefore put in a podiatry consult request. (Id.). Also, Defendant Potope stated that he was going to make a request for Plaintiff to be transferred to a medical center for physical therapy. (Id.).

On November 29, 2011, Plaintiff was seen in the clinic and Defendant Holtzapple discussed Plaintiff's physical therapy needs. (Doc. 66-7, p. 26).

On December 5, 2011, Plaintiff was treated at the clinic. (Doc. 66-7, p. 22).

On December 7, 2011, Plaintiff was seen in the clinic and advised to return at lunch to receive a new medical shoe. (Doc. 66-7, pp. 20-21). Defendant Holtzapple explained that his transfer request to a medical center was denied and that Plaintiff should be doing physical therapy exercises on his own, as he was shown. (Id.).

On December 14, 2011, Plaintiff had physical therapy. (Doc. 66-7, p. 18).

On December 15, 2011, Dr. Albright evaluated Plaintiff. (Doc. 66-11, pp. 30-31). He continued his prior recommendations and added that a brace would be helpful. (Id.).

On December 28, 2011, Plaintiff was treated in the clinic and had his medical shoe replaced. (Doc. 66-7, p. 13).

On December 29, 2011, Defendant Holtzapple learned that Dr. Albright would not make

17

Plaintiff's brace and therefore put in a request for him to see orthotics. (Doc. 66-7, p. 12).

On January 4, 2012, the URC Committee approved the request for orthotics. (Doc. 66-11, p. 21).

On January 9, 2012, Plaintiff was seen in the clinic and Defendant Buschman noted that Plaintiff's referral to orthotics was pending. (Doc. 66-7, p. 5).

On January 13, 2012, Plaintiff slipped in the shower and was treated for soreness in the clinic. (Doc. 66-7, p. 2).

On January 18, 2012, SVPO cast Plaintiff's leg for a brace. (Doc. 66-7, p. 1).

On January 19, 2012, Plaintiff saw Dr. Albright. (Doc. 66-11, p. 14).

On January 23, 2012, and January 25, 2012, Plaintiff was seen in the clinic. (Doc. 66-6, p. 42, 46).

On February 1, 2012, Plaintiff's brace was delivered. (Doc. 66-11, p. 8).

On February 16, 2012, Plaintiff saw Dr. Albright, who advised Plaintiff to use his brace. (Doc. 66-11, pp. 10-11).

On February 17, 2012, Plaintiff was given a new medical shoe. (Doc. 66-6, p. 36).

On February 21, 2012, SVPO brought Plaintiff his leg brace. (Doc. 66-6, p. 35).

On February 23, 2012, Plaintiff had physical therapy. (Doc. 66-6, p. 31); (Doc. 66-11, p. 2).

On February 28, 2012, Plaintiff was seen by ortho. (Doc. 66-6, p. 27-28).

On March 12, 2012, Plaintiff filed an amended complaint in the instant action. (Doc. 49).

The Bureau of Prisons ("BOP") has a three-tier administrative remedy procedure available to inmates who "seek formal review of an issue relating to any aspect of his/her own

18

confinement." Johnson v. Scism, 2011 U.S. Dist. LEXIS 34301, *4-5 (M.D. Pa. 2011) (Nealon,

J.) (citing 28 C.F.R. § 542.10(a)); (Doc. 66-1, pp. 3-4). Plaintiff filed numerous informal

resolutions and grievances[7] regarding, inter alia, his medical care. See generally (Doc. 66-1).

The BOP also has a procedure pursuant to the Federal Tort Claims Act under which an inmate

may file a claim for money damages for personal injury or death and/or damage to or loss of

property. See 28 C.F.R. §§ 543.30 - 543.32; (Doc. 66, pp. 10-13). Plaintiff filed two (2) claims.[8]

(Id.); (Doc. 66-1, pp. 35-36). Finally, pursuant to 18 U.S.C. § 4126, the BOP provides a remedy

for federal prisoners injured in the course of their prison employment. See 28 C.F.R. §§ 301.101

- 301-319.

## Discussion

Initially, Defendants claim that Defendant PHSP was never served and should be

dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. 67, p. 1 n.2).

Rule 4(m) provides that if a defendant is not served within 120 days, the court must

dismiss the action without prejudice or order that service be made within a specified time, unless

the plaintiff shows good cause for the failure, then the time for service must be extended. FED. R.

CIV. P. 4(m). Importantly, a plaintiff proceeding in forma pauperis is not responsible for

personally effectuating service. See 28 U.S.C. § 1915(d) ("The officers of the court shall issue

and serve all process, and perform all duties in such cases."). Rather, "it is the responsibility of

the United States Marshals Service to effectuate proper service of the summons and complaint."

Goodwin v. LA Weight Loss Ctrs., Inc., 2001 U.S. Dist. LEXIS 24198, *4 (E.D. Pa. 2001).

---

7. Specific complaints will be addressed herein.

8. These claims will be discussed in detail below.

On April 13, 2011, this Court granted Plaintiff's motion for leave to proceed in forma pauperis and directed the United States Marshal to serve the original complaint. (Doc. 8). On March 12, 2012, Plaintiff filed an amended complaint, naming, for the first time, Defendant PHSP. (Doc. 49). Accordingly, the 120 day time period to effectuate service started anew for this Defendant. See Cotton v. Allegheny County, 2012 U.S. Dist. LEXIS 144058, *16 (W.D. Pa. 2012) ("When an amended complaint names a new defendant, a plaintiff has 120 days from when the amended complaint is filed to serve that newly named defendant with process."). On March 28, 2012, this Court directed the United States Marshal to serve the amended complaint on the Defendants named therein. (Doc. 51). Summons were issued for all Defendants, including Defendant PHSP, and provided to the United States Marshal for service. Plaintiff was entitled to rely on the Marshals to make proper service. See Welch v. Folsom, 925 F.2d 666, 670 (3d Cir. 1991) (concluding that the district court erred by dismissing the complaint on the ground that the plaintiff failed to effect service because he may rely on the U.S. Marshal to make service); Smith v. City of Philadelphia, 2008 U.S. Dist. LEXIS 41971, *4 n.5 (E.D. Pa. 2008) (holding that the indigent plaintiff was entitled to rely on the Marshals Service to effect service of process and refusing to dismiss the complaint pursuant to Rule 4(m)). Accordingly, Plaintiff will not be penalized for the Marshals' failure to effect service on Defendant PHSP.

Moreover, the instant motion to dismiss and for summary judgment was filed on May 29, 2012, on behalf of all Defendants, including PHSP. See (Doc. 57). Thus, Defendant PHSP had notice of this lawsuit within the 120 day window for service and suffered no prejudice by the absence of service. See Warren v. Gelardi, 2008 U.S. Dist. LEXIS 109131, *51-52 and n.7 (D.N.J. 2008) (denying the defendants' motion to dismiss for lack of service because the

defendants had not "been prejudiced by this failure, as they have been active participants in this litigation and have even filed their own motion for summary judgment"; further, because summary judgment was being granted with respect to one defendant, service was rendered moot).

Defendant PHSP will not be dismissed under Rule 4(m).

## I.     Bivens Claims

Defendants argue that Defendants United States and PHSP should be dismissed because they are not proper parties to a Bivens claim. (Doc. 67, p. 21 n.5). This Court agrees.

"The United States and other governmental entities are not 'persons' within the meaning of Section 1983." Accardi v. United States, 435 F.2d 1239, 1241 (3d Cir. 1970) (concluding that the "United States is an improper party in this suit insofar as it is brought pursuant to Section 1983"), citing Egan v. City of Aurora, 365 U.S. 514 (1961). Consequently, the United States may not be named as a defendant under section 1983 or Bivens. See Stuler v. United States, 2008 U.S. Dist. LEXIS 30879, *14-15 n.7 (W.D. Pa. 2008). Additionally, "U.S. Public Health Service, a federal agency, is not a proper Defendant with respect to Plaintiff's constitutional claims under Bivens." Michtavi v. Scism, 2012 U.S. Dist. LEXIS 186164, *20 (M.D. Pa. 2012) (recommending that the defendant U.S. Public Health Service be dismissed with prejudice), adopted in part by, 2013 U.S. Dist. LEXIS 21580 (M.D. Pa. 2013) (Jones, J.) (dismissing as an improper defendant United States Public Health Services from the plaintiff's FTCA and Bivens claims). Accordingly, Defendants United States and PHSP will be dismissed from Plaintiff's Bivens claims.

### A.     Sovereign Immunity

Defendants argue that to the extent Defendants Miller, Santos, Nicklin, Lappin,

Holtzapple, Craig, Bennett-Meehan, and Schaffer are sued only in their official capacities[9], they are entitled to sovereign immunity and should be dismissed from the amended complaint for lack of subject matter jurisdiction. (Doc. 67, p. 14). The support brief reasons that <u>Bivens</u> provides a cause of action against federal employees, which is essentially a suit against the United States, and that the doctrine of sovereign immunity "renders the United States of America, its departments, and officials immune from suit except where the United States has consented to be sued." (<u>Id.</u> at p. 15) (quoting <u>Williamson v. United States Dep't of Agric.</u>, 815 F.2d 368, 373 (5th Cir. 1987)). Defendants assert that because Defendants Miller, Santos, Nicklin, Lappin, Holtzapple, Craig, Bennett-Meehan, and Schaffer are only named in their official capacities, they should be dismissed entirely. Additionally, they suggest that an amendment to name these Defendants in their individual capacities would be futile because Plaintiff failed to state a claim for deliberate indifference. (<u>Id.</u> at p. 16 n.6).

This Court interprets Plaintiff's opposition brief as conceding that these Defendants may not be sued for damages, while asserting that injunctive relief Defendants are not entitled to sovereign immunity. (Doc. 70, p. 2). Defendants, however, view Plaintiff's argument as stating that because he names the United States as a defendant, sovereign immunity is not applicable to dismiss his claims against any individual defendant sued in his or her official capacity. (Doc. 74, pp. 2-3) (distinguishing <u>Mitchum v. Hurt</u>, 73 F.3d 30 (3d Cir. 1995) and <u>Hubbard v. U.S. Envtl. Prot. Agency</u>, 809 F.2d 1 (D.C. Cir. 1986)).

"The doctrine of sovereign immunity bars all suits against the United States except where

_____

9. Defendants Buschman and Potope are sued in both their individual and official capacities. (Doc. 49, pp. 4-5).

such immunity is explicitly waived by Congress." Mierzwa v. United States, 282 Fed. Appx. 973, 976 (3d Cir. 2008) (finding that the section 1983 claims were barred by the Eleventh Amendment), citing United States v. Mitchell, 445 U.S. 535, 538 (1980). Significantly, "suits against officers in their official capacities are suits against the entity which an officer is an agent." Daley v. Lappin, 2011 U.S. Dist. LEXIS 100624, *18 (M.D. Pa. 2011) (Rambo, J.) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)). " Neither the United States nor its agencies have waived sovereign immunity for constitutional claims." Mierzwa, 282 Fed. Appx. at 976-77 (citing United States v. Testan, 424 U.S. 392, 400-02 (1976)); see also Nichols v. Lappin, 2012 U.S. Dist. LEXIS 73347, *8 (M.D. Pa. 2012) (Nealon, J.) (internal citations omitted) (concluding that "entry of summary judgment in favor of the Defendants is appropriate to the extent that the present complaint asserts Bivens claims against them in their official capacities").

Plaintiff's amended complaint only seeks injunctive relief against Defendant United States. (Doc. 49, p. 46). Thus, under this Court's reading of Plaintiff's opposition brief, the official capacity claims against Defendants Miller, Santos, Nicklin, Lappin, Holtzapple, Craig, Bennett-Meehan, Schaffer, Buschman, and Potope should be dismissed. See Olivares v. United States, 2011 U.S. App. LEXIS 16507, *6 n.3 (3d Cir. 2011) (dismissing the plaintiff's deliberate indifference claim against the individual defendants under the doctrine of sovereign immunity), citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

If Defendants' interpretation of Plaintiff's argument is correct, these Defendants are still entitled to dismissal. See Daley v. Lappin, 2011 U.S. Dist. LEXIS 100624, *17-20, *36-38 (M.D. Pa. 2011) (Rambo, J.) (holding that the Bivens claim against the defendants in their

official capacities was barred by sovereign immunity, regardless of the fact that the plaintiff also sought injunctive relief against these defendants); Daley v. Lappin, et al., No. 1:10-cv-2060 (M.D. Pa. October 5, 2010) at (Doc. 1, pp. 12-13) (seeking injunctive relief against the four individual defendants).

Notably too, Plaintiff was transferred out of USP-Allenwood in or around September, 2012. See (Docs. 76-77). Therefore, his claims for injunctive and declaratory relief are now moot. See Tsosie v. Dunbar, 2012 U.S. Dist. LEXIS 50336, *28 n.10 (M.D. Pa. 2012) (Caputo, J.) (holding that the claims for injunctive and declaratory relief became moot when the plaintiff was transferred to another correctional facility), affirmed by, 2012 U.S. App. LEXIS 23436 (3d Cir. 2012); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa.1998) (Vanaskie, J.) (concluding that the plaintiff's "transfer to another institution moots any claims for injunctive or declaratory relief").

Accordingly, Defendants Miller, Santos, Nicklin, Lappin, Holtzapple, Craig, Bennett-Meehan, and Schaffer, who are sued only in their official capacities, will be dismissed entirely from this action under the doctrine of sovereign immunity. Additionally, the official capacity claims against Defendants Buschman and Potope will be dismissed. For the reasons set forth below, this Court finds that allowing Plaintiff leave to amend to name Defendants Miller, Santos, Nicklin, Lappin, Holtzapple, Craig, Bennett-Meehan, and Schaffer in their individual capacities would be futile.

**B.    Retaliation**

**1.    Exhaustion**

Defendants assert that Plaintiff failed to exhaust his retaliation claim against Defendant

24

Potope for allegedly filing a false incident report against him and for getting Plaintiff fired from his job in Food Services. (Doc. 67, pp. 16-19), citing Booth v. Churner, 532 U.S. 731 (2001) (holding that the PLRA, 42 U.S.C. § 1997e, mandates exhaustion of administrative procedures). In their statement of facts, Defendants contend that from Plaintiff's arrival at USP-Allenwood until the instant action was commenced, Plaintiff filed twenty-two (22) administrative remedies, none of which claimed that Defendant Potope retaliated against him by filing a false incident report. (Doc. 66, ¶¶ 37-52). Defendants argue that Defendant Potope is entitled to judgment as a matter of law for Plaintiff's failure to exhaust. (Doc. 67, p. 19).

In his opposition brief, Plaintiff lists the grievances he filed and alleges that he "fully exhausted his claims for: 1) denial of orthopedic surgery; 2) his job assignment and working conditions in food services; 3) denial of proper food safety shoes; and 4) his claim that he was retaliated against when Mr. Schaffer removed him from food services for filing grievances due to injury." (Doc. 70, p. 4). Plaintiff refers specifically to grievance number 592578 regarding removal from his job in Food Services. (Id. at p. 3). Plaintiff also asserts that he was "merely making notes of the conduct as to be offensive ... on information and belief that he was fired and written an incident report by Defendant Potope." (Id. at p. 5).

Defendants reply that although they liberally construed the amended complaint as raising a retaliation claim against Defendant Potope, Plaintiff's opposition brief indicates that Plaintiff did not intend to raise such a claim. (Doc. 74, pp. 3-4). Notably, this Court also broadly read the amended complaint as alleging a retaliation claim against Defendant Potope, as well as against Defendants Holtzapple, Schaffer, and perhaps Defendant Craig. See (Doc. 49, pp. 40-43).

As to Defendant Potope, Plaintiff did not file any administrative remedies claiming that

Defendant Potope retaliated against him by filing a false incident report. See (Doc. 66-1, pp. 6, 21-33). Accordingly, this claim is not exhausted.

Next, although Plaintiff exhausted his claim that he was removed from his Food Services job for filing a grievance, administrative remedy 592578 alleged that Livengood, Stackhouse, and Defendant Schaffer were responsible for this alleged retaliatory act. See (Doc. 49, p. 52); (Doc. 66-2, p. 13). The grievance did not mention Defendants Potope or Craig, nor is either Defendant a member of the Food Services staff. (Id.). In Spruill, the Third Circuit Court of Appeals held that an inmate procedurally defaulted a claim by failing to identify the defendant in his grievance. Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). Therefore, as it relates to Defendants Potope and Craig, Plaintiff failed to exhaust his claim that he was removed from Food Services for filing a grievance.

The retaliation claim against Defendant Schaffer, however, is exhausted. The merits of this claim will be addressed below.

Finally, the amended complaint alleges that Defendants Potope and Holtzapple retaliated against Plaintiff with threats and/or verbal abuse. See (Doc. 49, p. 42). No grievances were filed with this allegation. See (Doc. 66-1, pp. 6, 21-33). Thus, these retaliation claims are not exhausted.

### 2. Merits of the Claim

Defendants assert that if this Court does not dismiss Plaintiff's retaliation claim against Defendant Potope for failure to exhaust, it should nevertheless be dismissed for failure to state a claim upon which relief may be granted. (Doc. 67, p. 25). Defendants argue that because Plaintiff successfully appealed the incident report from Defendant Potope and had the report

expunged, Plaintiff suffered no adverse action. (Id. at pp. 25-26) (discussing elements of a First Amendment retaliation claim). Additionally, Defendants argue that Plaintiff failed to show that the filing of grievances was a substantial or motivating factor in Defendant Potope's decision to write the incident report. (Id. at pp. 26-27). Defendants further claim that Plaintiff cannot establish a causal connection between the filing of a grievance about an injury in the Food Services Department that did not involve Defendant Potope and his issuance of an incident report against Plaintiff for lying about medical care. (Id.).

Aside from the exhaustion issue, which was previously discussed, Plaintiff's opposition brief does not address the retaliation claim against Defendant Potope. See (Doc. 70).

To establish a retaliation claim, a prisoner must prove: (1) "the conduct which led to the alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials"; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him". Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). A "prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim." Wicker v. Shannon, 2010 U.S. Dist. LEXIS 99777, *19-20 (M.D. Pa. 2010) (Caputo, J.) (dismissing all but one retaliation claim), citing Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). To satisfy the second Rauser requirement, the prisoner must demonstrate "that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser, 241 F.3d at 333 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). To show a causal link, a prisoner must prove "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333; Conklin v. Warrington Twp., 2009 U.S. Dist. LEXIS

36256, *12 (M.D. Pa. 2009) (Conner, J.) ("To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act."), citing Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). "The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events." Royster v. Beard, 2008 U.S. Dist. LEXIS 56764 (M.D. Pa. 2008) (Caputo, J.) (citing Lape v. Pennsylvania, 157 Fed. Appx. 491, 498 (3d Cir. 2005)).

"Once the initial showing is made by the prisoner, the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154-55 (3d Cir. 2010) (citing Rauser, 241 F.3d at 334). The "courts should afford deference to decisions made by prison officials." Rauser, 241 F.3d at 334.

First, the retaliation claim against Defendant Potope for allegedly filing a false incident report, which is unexhausted, fails the second part of the Rauser test, requiring Plaintiff to have suffered an adverse action, because the charge was dismissed. See Tabb v. Hannah, 2012 U.S. Dist. LEXIS 106529, *29 (M.D. Pa. 2012) (Caldwell, J.) (concluding that the plaintiff failed to state a retaliation claim based on his receipt of a misconduct because he suffered no adverse consequence as it was ultimately discharged in his favor). Summary judgment will be granted in Defendant Potope's favor on this claim.

The unexhausted allegations of retaliation that Plaintiff was threatened, intimidated, confused, and "cussed out", see (Doc. 49, pp. 41-42), also do not satisfy part two (2) of the Rauser test. Specifically, "[v]erbal abuse or threats do not constitute the type of adverse action

28

sufficient to support a retaliation claim." Alexander v. Forr, 2006 U.S. Dist. LEXIS 70002, *13 (M.D. Pa. 2006) (Vanaskie, J.), citing Bartelli v. Bleich, 2005 U.S. Dist. LEXIS 43711, *7 (M.D. Pa. 2005) (Kosik, J.) (stating, "assertions of verbal abuse do not constitute 'adverse action' sufficient to support a 42 U.S.C. § 1983"); see also Howard v. Bureau of Prisons, 2008 U.S. Dist. LEXIS 7997, *42 (M.D. Pa. 2008) (Caputo, J.) (holding that "a threat from a prison guard, alone, is not actionable retaliation"). Accordingly, Defendants Potope and Holtzapple will be awarded summary judgment in this regard.

The final retaliation claim relates to Plaintiff being fired from his job allegedly for exercising his right to file a grievance. (Doc. 49, pp. 40-41). To the extent the amended complaint mentions Defendants Potope and Craig in these allegations, not only is the claim unexhausted but there is no evidence either Defendant was involved in the decision to terminate Plaintiff's work assignment with Food Services. "[E]ach named defendant must be shown ... to have been personally involved in the events or occurrences which underlie a claim." Thomas v. Varano, 2012 U.S. Dist. LEXIS 32961, **24 (M.D. Pa. 2012) (Nealon, J.) (citing Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)). Thus, if Plaintiff intended to include these Defendants in his retaliatory termination claim, summary judgment will be awarded in their favor. See Hill v. Lappin, 2012 U.S. Dist. LEXIS 34926, *13-14 (M.D. Pa. 2012) (Conaboy, J.) (granting summary judgment in favor of certain defendants on the grounds of lack of personal involvement).

As this claim relates to Defendant Schaffer, it is exhausted. Plaintiff's ability to file grievances is a protected activity for purposes of a retaliation claim. See Wicker, 2010 U.S. Dist. LEXIS 99777 at *19-20. Also, his employment termination is an adverse action. See Manning

v. Flock, 2012 U.S. Dist. LEXIS 44955, *32 (M.D. Pa. 2012) (Conner, J.) (finding that "in order to establish adverse action, an inmate must have been removed from his job...."), citing James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989). But, Plaintiff has not established a causal connection between his protected activity and the adverse action. See Celotex, 477 U.S. at 324 (holding that, to avoid summary judgment, the nonmoving party must produce evidence to show the existence of every element essential to its case).

"To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Barr v. Feild, 2012 U.S. Dist. LEXIS 15648, *6 (E.D. Pa. 2012). "The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element." Conklin, 2009 U.S. Dist. LEXIS 36256 at *12 (citing Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003)). "For temporal proximity alone to establish causation, the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Conklin, 2009 U.S. Dist. LEXIS 36256 at *13 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

The time difference between Plaintiff's grievance about his workplace injury, dated March 24, 2010, and his employment termination on April 29, 2010, is not "unusually suggestive." See Smith v. ABF Freight Sys., 2007 U.S. Dist. LEXIS 79801 (M.D. Pa. 2007) (Conner, J.) (granting summary judgment because the one and a half month time difference between the plaintiff's protected activities and the corresponding adverse employment actions "is not so unduly suggestive as to give rise to an inference of causation"). "In the employment

context, the Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, whereas a temporal proximity of ten days", without more, is insufficient to establish causation. Conklin, 2009 U.S. Dist. LEXIS 36256 at *13 (stating that "ten days is sufficient to establish causation only when accompanied by other evidence of an employer's wrongdoing"). "This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence." Id. This Court finds that the five (5) week delay between the filing of Plaintiff's grievance concerning his work-related injury and the alleged retaliatory job termination is not "unusually suggestive."

In cases where the temporal proximity is not so close as to be unduly suggestive, the Third Circuit Court of Appeals has "recognized that 'timing plus other evidence may be an appropriate test....'" Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that three weeks between the plaintiff's protected conduct and the termination letter was not "unusually suggestive"), quoting Estate of Smith, 318 F.3d at 512. However, Plaintiff has not offered any other evidence supporting his retaliation claim against Defendant Schaffer. Notably, Plaintiff's allegations that he was threatened, "cussed out", and told to suffer, are not contributed to Defendant Schaffer or any member of the Food Services Department. (Doc. 49, pp. 40-43). Also, the alleged threats surrounded Plaintiff's medical care, not his work assignment. (Id.). Accordingly, these allegations do not provide other evidence that Defendant Schaffer's decision to terminate Plaintiff from his work assignment was retaliatory. See Killen v. Northwestern Human Servs., 2007 U.S. Dist. LEXIS 66602, *26-28 (E.D. Pa. 2007) (finding that approximately six weeks between the protected conduct and the plaintiff's termination was not "unusually suggestive" and must be supported by "some other evidence to support a causal

31

link"). Summary judgment will therefore be entered in favor of Defendants on Plaintiff's final retaliation claim. See Fischer v. Transue, 2008 U.S. Dist. LEXIS 64818, *30 (M.D. Pa. 2008) (Conner, J.) (granting summary judgment because twenty-two days was insufficient to establish causation and there was no other evidence to give rise to an inference of causation), quoting Estate of Smith, 318 F.3d at 512.

### C.     Deliberate Indifference

Defendants argue that Defendant Buschman was not deliberately indifferent to Plaintiff's serious medical needs. (Doc. 67, pp. 19-21) (discussing the required elements of an Eighth Amendment medical care claim). Defendants cite the numerous medical encounters between January 28, 2010, and June 1, 2012. (Doc. 67, p. 20). They point out that a few months after his arrival at USP-Allenwood, Plaintiff was evaluated by an outside specialist for a leg brace and fitted for medical shoes. (Doc. 67, pp. 22-23), citing (Doc. 66). Defendants assert that the URC Committee deferred the tendon lengthening surgery until after Plaintiff tried the leg brace. (Id.). In September 2010, Plaintiff received his brace and medical shoes, but repeatedly refused to use the brace. (Id.). In March, 2011, Plaintiff underwent tendon lengthening surgery. (Id.). Defendants note that since that time, Plaintiff was successfully treated for an ulcer, and completed physical therapy treatment in February 2012. (Id.). On February 28, 2012, the orthopedic surgeon evaluated Plaintiff and made no recommendation for further follow-up appointments. (Id.)

Defendants assert that Plaintiff's claim that he should have received tendon lengthening surgery sooner amounts to a mere disagreement with medical staff and is insufficient to state an Eighth Amendment violation. (Doc. 67, p. 23). Defendants contend that Defendant Buschman is

entitled to summary judgment. (Id.). Further, Defendants suggest that allowing Plaintiff to amend his complaint to name any non-medical Defendants would be futile because such persons are generally not liable when the plaintiff is receiving medical care. (Id. at n.8), citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (concluding that when "a prisoner is under the care of medical experts..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands").

Plaintiff contests Defendants' statement of facts as to the amount of times he was treated by medical staff. (Doc. 70, p. 5). Plaintiff alleges that less than a month after his arrival at USP-Allenwood, he was examined by Defendant Craig for a blister on his toe, at which time Plaintiff informed Defendant Craig of his medical history. (Id. at pp. 10-11). Plaintiff claims that Defendant Craig initially submitted a referral for Plaintiff to see a specialist and to be fitted for medical shoes and a leg brace, but subsequently amended his recommendation to a less expensive course of treatment. (Id.). Plaintiff alleges that on August 1, 2010, Defendant Buschman denied his request to see an orthopedic surgeon, stating that the Bureau of Prisons does not have the money for every inmate with minor problems to see a specialist. (Id. at p. 12). He claims that Defendant Buschman recommended a leg brace despite knowing that all prior braces failed to benefit Plaintiff and only caused him additional pain. (Id.). Plaintiff alleges that he continuously complained about the leg brace. (Id. at p. 13). He claims that the URC Committee reviewed his medical history of past injuries, including blisters, infections, swelling, boils, lesions, and an ulcer, and the prior failed medical treatments, but continuously denied his request to see a specialist and for tendon lengthening surgery. (Id.). Plaintiff claims that it was only after he brought suit that Defendants rendered some medical attention. (Id. at p. 6). He

33

submits that his medical records are evidence of deliberate indifference. (Id. at p. 7).

Plaintiff asserts that it was apparent he had a serious medical need. (Doc. 70, pp. 7-10), quoting Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (holding that a "medical need is serious ... if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention") (internal citations omitted). Plaintiff argues that this is not a case in which prison officials took so many steps as to preclude a finding of deliberate indifference. (Doc. 70, p. 6), citing Hemmings v. Gorczyk, 134 F.3d 104, 108-09 (2d Cir. 1998) (vacating the district court's dismissal of the plaintiff's deliberate indifference claim because although the plaintiff received some medical attention for a diagnosed ankle "sprain", including two x-rays, the defendants waited for two months before sending the plaintiff to a specialist, who determined that the plaintiff had classic symptoms of a ruptured Achilles tendon); Hathaway v. Coughlin, 37 F.3d 63, 68-69 (2d Cir. 1994) (denying summary judgment because a jury could infer deliberate indifference from the defendant's failure to disclose broken pins in the plaintiff's hip and to discuss the option of surgery, and from the defendant's failure to refer the plaintiff for re-evaluation for surgery for more than two (2) years after the broken pins were discovered). He claims that the URC Committee was deliberately indifferent by ignoring the fact that the current, and repeated, course of treatment was inadequate and by denying Plaintiff's request to see a specialist and to receive tendon lengthening surgery. (Doc. 70, pp. 13-14), citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (stating that one of the reasons separating the complaint from ordinary allegations of medical malpractice was "the sheer number of specific instances in which the doctor allegedly insisted on continuing courses of treatment that

the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners"). Plaintiff asserts "that denying an inmate access to a physician capable of assessing the need for treatment and/or preventing [the] inmate from recieving [sic] recommended treatment is deliberate indifference." (Id. at pp. 11-12). Additionally, he asserts that Defendant Craig, by canceling Plaintiff's orthopedic consult based solely on cost and continuing the use of leg braces knowing they only resulted in additional injuries, was also deliberately indifferent in violation of the Eighth Amendment. (Id.), citing Vanderhoff v. Prentice, 251 Fed. Appx. 861, 862 (5th Cir. 2007) (vacating the district court's decision to dismiss the inmate's deliberate indifference claim, that the doctor was made aware of his back condition, but informed the inmate that surgery "costs too much", because it was not yet apparent that the inmate could prove no set of facts that would allow relief).[10] Plaintiff submits that a jury could conclude that Defendants "knowingly took an 'easier but less effective course of treatment.'" (Id.), quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (concluding that a doctor's decision to take "an easier but less efficacious course of treatment can constitute deliberate indifference"). To substitute for a COM, Plaintiff submits a letter dated August 3, 2010, in which Defendant Buschman opined that tendon lengthening surgery was not the proper treatment because his foot problem was not in the tendon. (Doc. 70, Ex. 1). He also submits the treatment notes from Doctor Ball on January 26, 2011, who recommended tendon lengthening. (Doc. 70, Ex. 2).

In reply, Defendants claim that Plaintiff's argument, consisting of bald allegations

---

10. After remand, the District Court subsequently granted the doctor's motion for summary judgment because the undisputed facts established that the inmate had no documented medical history of back pain and the doctor had not been informed of any such back pain. See Vanderhoff v. Prentice, 2008 U.S. Dist. LEXIS 58693 (W.D. La. 2008).

without any factual support, is not supported by specific references to the record to establish a factual dispute. (Doc. 74, p. 5), citing FED. R. CIV. P. 56(e); Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (stating that it was troubled by the plaintiff's failure to provide proper citations to the record because "'[j]udges are not like pigs, hunting for truffles buried in' the record"), quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Defendants note that in White, which Plaintiff cites, the Court found only that the plaintiff had alleged sufficient facts to state a claim for deliberate indifference, not that the plaintiff would survive summary judgment. (Doc. 74, p. 6) (discussing White, 897 F.2d 103). They distinguish Hathaway on the grounds that the doctor was untruthful about the inmate's care by withholding critical information that would allow the inmate to make an informed decision regarding the course of his medical treatment. (Id. at p. 7) (citing Hathaway, 37 F.3d 63). Defendants argue that Defendant Craig did not simply cancel Plaintiff's treatment; rather, he removed a year old note for a consultation that was made at a prior facility and entered a new consultation request for Plaintiff to be fitted for medical shoes. (Id. at pp. 7-8). Defendants allege that "[a]fter the medically appropriate procedures were followed and it was determined Patterson was not amenable to following the doctor's order, Patterson was examined by the orthopedic specialist who recommended that Patterson undergo tendon lengthening surgery." (Id.). Defendants argue that Plaintiff's assertion that he should have received surgery sooner is nothing more that a mere disagreement with medical staff insufficient to support an Eighth Amendment claim. (Id.). Defendants also dispute Plaintiff's allegation that they caused the bleeding and blisters and that it was a combination of Plaintiff's prior injury and his failure to follow medical advice that resulted in these conditions. (Doc. 74, p. 9). Defendants assert that

Plaintiff misunderstands the Hemmings court, which held that the inmate's claim withstood dismissal because for three months the only treatment the inmate received for a swollen and painful ankle was an x-ray and a nurse took the inmate's crutch away for no reason. (Id. at pp. 9-10) (citing Hemmings, 134 F.3d 104). Defendants argue that they have provided sufficient record evidence to show they were not deliberately indifferent to Plaintiff's medical needs. (Id.).

## 1. Deliberate Indifference

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates, 834 F.2d at 347. Additionally, if the delay or denial of adequate medical care results in the unnecessary and wanton infliction of pain or causes an inmate to suffer a life-long handicap or permanent loss, the medical need is "serious." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Importantly, "negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference." Clark v. Fleming, 2011 U.S. Dist. LEXIS

24584, *17-18 (M.D. Pa. 2011) (Caputo, J.) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976));

Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). For example, a "medical decision not to

order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is

medical malpractice." Estelle, 429 U.S. at 97. Further, a complaint's mere conclusory

allegations that medical defendants acted "intentionally" or "recklessly" without supporting

factual allegations is insufficient to establish deliberate indifference. Horan v. United States,

2009 U.S. Dist. LEXIS 127743, *29 (M.D. Pa. 2009) (Mannion, M.J.), adopted by, 2009 U.S.

Dist. LEXIS 19650 (M.D. Pa. 2009) (McClure, J.) (granting summary judgment).

Prison medical authorities are given considerable latitude in the diagnosis and treatment

of inmate patients. Young v. Kazmerski, 266 Fed. Appx. 191, 194 (3d Cir. 2008). A doctor's

disagreement with the professional judgment of another doctor is not actionable under the Eighth

Amendment. See White, 897 F.2d at 108-10 (No deliberate indifference claim is stated when a

doctor disagrees with the professional judgment of another doctor since "[t]here may, for

example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v.

Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (concluding that a claim for deliberate indifference does

not arise just because one doctor disagrees with the diagnosis of another). Also, a mere

difference of opinion between the prison's medical staff and the inmate regarding the diagnosis

or treatment which the inmate receives does not support a claim of cruel and unusual

punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) (Nealon, J.). If there

is a dispute over the adequacy of the received treatment, courts have consistently been reluctant

to second guess the medical judgment of the attending physician. Little v. Lycoming County,

912 F. Supp. 809, 815 (M.D. Pa. 1996) (McClure, J.), aff'd, 101 F.3d 691 (3d Cir. 1996). The

key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer, 685 F. Supp. at 1339. "An allegation of deliberate indifference, by its very nature, precludes those periods of time where Plaintiff did receive medical care." Wishnefsky v. Salameh, 2009 U.S. Dist. LEXIS 124600, *15 (W.D. Pa. 2009).

This Court finds that Plaintiff had a serious medical need; however, Defendants were not deliberately indifferent to his needs. The medical records on file clearly demonstrate that Plaintiff received continuous medical attention for his injured leg and foot and that such attention lacks the requisite deliberate indifference to support an Eighth Amendment claim. First, there is no merit to Plaintiff's claim that Defendant Craig knowingly disregarded a serious risk to Plaintiff's health by cancelling a consult request that was made by another federal institution. The request "to evaluate and treat accordingly" was made more than a year earlier and Defendant Craig had no reason to believe that Plaintiff had not been evaluated. (Doc. 66-2, p. 25). At most, Defendant Craig's decision was merely a disagreement with another doctor. See Inmates of Allegheny County Jail, 612 F.2d at 762 (concluding that a claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). Further, Defendant Craig did not deny treatment; rather, Defendant Craig requested orthotics to make medical shoes for Plaintiff, which they did. See Wishnefsky, 2009 U.S. Dist. LEXIS 124600 at *15 (holding that an "allegation of deliberate indifference, by its very nature, precludes those periods of time where Plaintiff did receive medical care").

Plaintiff's allegations that Defendant Craig and Defendant Buschman intentionally took a less expensive course of treatment are unsupported by the record. See Horan, 2009 U.S. Dist.

39

LEXIS 19650. Although Defendants wanted to see if the orthotic would work before attempting any surgical procedures, there is no evidence that the decision was made solely to save money or with the intent to cause Plaintiff harm. (Doc. 66-2, pp. 28-29). In fact, Defendant Buschman opined that tendon lengthening surgery would not be helpful. (Id.); See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."). However, after Plaintiff tried the brace for several months, Defendant Buschman requested an orthopedic surgery consult. (Doc. 66-2, p. 41). On January 26, 2011, Dr. Ball evaluated Plaintiff and recommended surgery. (Doc. 66-4, p. 37). The surgery was approved and performed less than two months later. (Doc. 66-5, pp. 24-27). These actions contradict Plaintiff's allegations of deliberate indifference. See Farmer, 685 F. Supp. at 1339. Notably, surgery was approved and scheduled before the instant action was initiated, contrary to Plaintiff's claim that medical attention was only rendered after suit was brought.

Plaintiff's allegation that he should have received surgery sooner amounts to nothing more than a disagreement with medical personnel concerning what treatment he should have received and when, which does not serve as a predicate to liability under section 1983. See Farmer, 685 F. Supp. at 1339. This is particularly so in light of the fact that there is no evidence of record that any Defendant intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon him. Id. While Plaintiff is not in agreement with the medical decisions made, he was accorded continual medical care. Plaintiff was treated on every visit to the clinic, to orthotics, to the physical therapy department, and by outside specialists, such as Dr. Albright and Dr. Ball. Accordingly, Plaintiff has failed to present evidence from which a reasonable jury

40

could conclude that Defendants possessed the culpable mental state necessary for Eighth Amendment liability to attach. See Estelle, 429 U.S. at 106; Wishnefsky, 2009 U.S. Dist. LEXIS 124600 at *15. Indeed, the extent and quality of medical attention that Defendants provided Plaintiff precludes a finding of deliberate indifference.

## 2. **Respondeat Superior**

It is well-established that non-medical prison staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts. . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See Spruill, 372 F.3d 218; Durmer, 991 F.2d 64; Garvey v. Martinez, 2010 U.S. Dist. LEXIS 12066, *15-19

(M.D. Pa. 2010) (Munley, J.).

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:
>
> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Applying these constitutional benchmarks, it is apparent that, with respect to the non-medical corrections staff, as well as the supervisory medical Defendants, Plaintiff's complaint fails to state a claim upon which relief can be granted. Plaintiff's complaint is in essence nothing more than an assertion of respondeat superior liability which seeks to hold these officials liable because they supervised others. This ground of supervisory liability has been expressly rejected by the courts. Moreover, non-medical corrections officials may appropriately defer to the judgment of medical professionals with respect to the care and treatment of an inmate and may

not be held personally liable for that care.

Summary judgment will therefore be awarded in favor of all Defendants on Plaintiff's

Eighth Amendment claim.

### D.    Statutory Immunity- Defendants Bennett-Meehan and Craig

Defendants contend that Defendants Bennett-Meehan and Craig joined the Public Health

Service prior to the date of the allegations and, thus, cannot be sued in a <u>Bivens</u> action. (Doc. 67,

pp. 24-25). Defendants argue that because the FTCA is the exclusive remedy for injury caused

from the performance of medical treatment by an employee of the Public Health Service, these

Defendants are entitled to statutory immunity. (<u>Id.</u>) (citing 42 U.S.C. § 233(a)); (Doc. 74, p. 4).

Plaintiff agrees that the FTCA is the only remedy for injuries caused by the actions of

Public Health Service physicians, but argues that he has invoked jurisdiction pursuant to 42

U.S.C. § 233(a). (Doc. 70, p. 16).

The Public Health Service Act provides:

> The remedy against the United States provided by [the Federal Tort Claims Act]
> ... for personal injury, including death, resulting from the performance of medical,
> surgical, dental, or related functions ... by any commissioned officer or employee
> of the Public Health Service while acting within the scope of his office or
> employment, shall be exclusive of any other civil action or proceeding....

42 U.S.C. § 233(a); <u>Lomando v. United States</u>, 667 F.3d 363, 371 (3d Cir. 2011) (holding that

"an action against the United States under the FTCA is the exclusive remedy for persons alleging

'personal injury, including death, resulting from the performance of medical ... or related

functions' by Public Health Service employees acting within the scope of their employment").  In

<u>Hui</u>, the United States Supreme Court held that Public Health Service employees are not

personally subject to <u>Bivens</u> actions for constitutional violations arising out of their official

duties. <u>Hui v. Castaneda</u>, 559 U.S. 799 (2010) (discussing 42 U.S.C. § 233). Specifically, an officer or employee of the Public Health Service "is absolutely immune under the terms of the Public Health Service Act, 42 U.S.C. § 233(a)." <u>Arrington v. Inch</u>, 2006 U.S. Dist. LEXIS 20193, *14-15 (M.D. Pa. 2006) (Conner, J.) (dismissing the defendant, a commissioned officer of the Public Health Service, from the <u>Bivens</u> claim).

This Court will therefore dismiss the <u>Bivens</u> claims against Defendants Bennett-Meehan and Craig, employees of PHSP, whether brought in their official or personal capacities. <u>See</u> <u>Michtavi v. Scism</u>, 2013 U.S. Dist. LEXIS 21580, *5-6 (M.D. Pa. 2013) (Jones, J.) (dismissing all <u>Bivens</u> claims against the United States Public Health Services and any individual employees thereof). Notably, it is apparent from Plaintiff's brief in opposition, arguing that Plaintiff has invoked jurisdiction under 42 U.S.C. § 233(a), that he misunderstands the Act. Dismissing Defendants Bennett-Meehan and Craig from the <u>Bivens</u> claim, does not automatically preclude this Court from considering[11] their conduct under Plaintiff's FTCA claim against the United States. <u>See id.</u> at *5 n.3 ("When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act, 28 U.S.C.S. §§ 1346, 2671-2680, generally authorizes substitution of the United States as the defendant.").

### E.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff's Eighth Amendment rights were not violated and, regardless, because no reasonable official could find

---

11. This Court's ability to consider the merits of Plaintiff's FTCA claim will depend on whether he fully exhausted that claim, as will be discussed herein. <u>See</u> (Doc. 74, pp. 4-5) (Defendants argue that with regards to Plaintiff's FTCA claim against Defendants Bennett-Meehan and Craig, he failed to exhaust administrative tort remedies and failed to file a COM.).

their actions to be illegal or unreasonable. (Doc. 67, pp. 28-30) (discussing the two-part qualified immunity inquiry). Defendants note that "qualified immunity provides 'ample room for mistaken judgments'". (Id.) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)). They assert that Defendants Buschman, Potope, and Santos consistently and appropriately provided medical care to Plaintiff. (Id. at p. 30). Defendants suggest that Plaintiff's allegations are nothing more than a mere disagreement as to the appropriate course of medical treatment. (Id.).

Plaintiff alleges that Defendants are not entitled to qualified immunity because their conduct subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 70, p. 17). He argues that Defendants intentionally denied and/or delayed his request to see an orthopedic specialist which led to possible toe amputation and that the failure to treat his condition was life threatening. (Id.). Plaintiff further submits that it is questionable whether immunity remains available after the Supreme Court's decision in Richardson v. McKnight, 521 U.S. 399 (1997), that private prison guards do not enjoy qualified immunity. (Id.).

In reply, Defendants explain that the Richardson case involved private, for-profit guards working at a state institution, whereas the instant action involves government employees acting within the scope of their employment. (Doc. 74, pp. 10-11) (discussing Richardson, 521 U.S. 399). Defendants allege that Plaintiff was examined by numerous medical personnel, including an orthopedic specialist, was treated for his complaints, and was given surgery when it was medically indicated. (Id.). They reiterate that Plaintiff's claims "amount to a mere disagreement as to the appropriate treatment of his condition." (Id.).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

45

rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This doctrine "provides not only a defense to liability, but "immunity from suit." Milhouse v. Gee, 2011 U.S. Dist. LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff." Estate of Smith v. Marasco, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194 (2001)). "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." Bennett, 274 F.3d at 136. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id. The "court must dispose of the claim in the defendant's favor." Milhouse, 2011 U.S. Dist. LEXIS 91749 at *25 (citing Saucier, 533 U.S. at 201). Only once "it is determined that evidence of a constitutional violation has been adduced, [will] courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." Bennett, 274 F.3d at 136. If the right was clearly established, "then a court must inquire as to 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Carvalho v. Bledsoe, 2012 U.S. Dist. LEXIS 137937, *37 (M.D. Pa. 2012) (Conaboy, J.) (quoting Saucier, 533 U.S. at 201).

As explained in this Memorandum, Plaintiff has failed to establish a constitutional

46

violation. Therefore, all Defendants are protected by qualified immunity.

## II.     FTCA[12] and IACA[13] Claims

Defendants state that Plaintiff filed two administrative tort claims. (Doc. 67, p. 32). The

first was filed on November 29, 2010, regarding Plaintiff's fall during his work assignment in the

Food Services Department. (Id.). On January 6, 2011, the BOP issued a letter stating, "this tort

claim ...is being rejected because [Plaintiff is] claiming an injury that occurred while at work,

which is excluded from coverage under the [FTCA]. The exclusive remedy for inmate accidents

at work is the Inmate Accident Compensation System...." (Id.); (Doc. 66-2, p. 22). Plaintiff filed

a second tort claim on January 25, 2011, for the alleged denial of medical care for his foot. (Doc.

67, p. 33). This claim was denied on July 22, 2011. (Id.).

### A.     Claim filed November 29, 2010

"[T]he proper remedy for work related accidents is the Inmate Accident Compensation

System, 18 U.S.C. 4126, 28 C.F.R. 301." Vasquez v. Unicor, 2013 U.S. Dist. LEXIS 38690, *22

(M.D. Pa. 2013) (Carlson, M.J.). "In the Inmate Accident Compensation Act, Congress created a

scheme to compensate inmates for injuries sustained in the course of their penal employment."

Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3d Cir. 2007) (finding that the FTCA claim is

precluded by the IACA). "By statute, the Federal Prison Industries Fund pays 'compensation to

inmates or their dependents for injuries suffered in any industry or in any work activity in

_____

12. As previously discussed, the United States is the only proper party Defendant in Plaintiff's
FTCA claims. See 28 U.S.C. § 2679(b), (d)(1); Ricketts v. AW of Unicor, 2009 U.S. Dist.
LEXIS 63733, *19-20 (M.D. Pa. 2009) (Rambo, J.).

13. Inmate Accident Compensation Act ("IACA"). See 18 U.S.C. § 4126; 28 C.F.R. § 301. The
IACA is also known as the Federal Prison Industries Act.

connection with the maintenance or operation of the institution in which the inmates are confined.'" Id. "Federal prisoners seeking compensation for injuries sustained during penal employment are limited to the remedy provided by 18 U.S.C. § 4126." Id. (citing United States v. Demko, 385 U.S. 149, 151-54 (1966)); see also Peguero v. Meyer, 2012 U.S. Dist. LEXIS 140304, *16-17 (D.N.J. 2012) (The "IACA is the exclusive[14] remedy for a federal prisoner who is injured on the job, and it precludes recovery under the Federal Tort Claims Act ('FTCA') for a prisoner's work-related injuries."). Accordingly, the courts do not have jurisdiction to entertain an FTCA claim for an inmate's work-related injuries. See Guttknecht v. United States, 1998 U.S. Dist. LEXIS 5835, *6 (E.D. Pa. 1998) (explaining that the "court cannot overlook a jurisdictional deficiency merely because the government was dilatory in raising the issue").

"[W]hether the plaintiff's injuries were caused by the performance of work is irrelevant; as long as the plaintiff's injuries occurred while the prisoner was on the job § 4126 is his exclusive remedy." Love v. United States Federal Bureau of Prisons, 1991 U.S. Dist. LEXIS 7386, *7 (E.D. Pa. 1991). "'The cause of the injury is irrelevant[15] so long as the injury itself occurred while the prisoner was on the job.'" Peguero, 2012 U.S. Dist. LEXIS 140304 at *17 (quoting Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)). To the extent that a plaintiff argues that his particular claim is brought in connection with the subsequent negligence of prison doctors, rather than the initial work-related injury, the claim is still barred." Cooleen,

---

14. Notably, "18 U.S.C. § 4126 does not prevent plaintiffs from bringing Bivens actions for work-related injuries." Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 n.5 (3d Cir. 2007).

15. "At least one authority has held, however, that this statute [18 U.S.C. § 4126] does not apply to injuries sustained as the result of intentional conduct." Barber v. Grow, 929 F. Supp. 820, 822 (E.D. Pa. 1996).

248 Fed. Appx. at 362. "Section 4126 [also] provides the exclusive remedy where a prisoner with a pre-existing medical problem is subsequently injured in a work-related incident.'" Peguero, 2012 U.S. Dist. LEXIS 140304 at *17 (quoting Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987)).

> The Inmate Accident Compensation Act ('IACA'), and the regulations promulgated thereunder, provide two types of compensation for a federal inmate who suffers a work-related injury in prison. The first type of compensation is available only when the inmate is ready to be released from prison and re-enter the workforce. 28 C.F.R. §§ 301.101(a), 301.301-319. If the inmate still suffers a residual physical impairment as a result of the work-related injury, then within forty-five days of his release date, he can submit a claim for compensation. Id. § 301.303(a). If, however, he has fully recovered from his injuries while incarcerated, he is not entitled to any compensation. Id. § 301.314(a). The second type of compensation is for wages the inmate actually loses while he is prevented from doing his work assignment due to his injury. Id. §§ 301.101(b), 301.201-205.

Peguero, 2012 U.S. Dist. LEXIS 140304 at *15-16 (finding that because the allegations in the complaint surround a work-related injury compensable under the IACA, the plaintiff's claim under the Act is premature until he is released from prison).

In the claim filed on November 29, 2010, Plaintiff listed the date of incident as March 23, 2010, when he "slipped on water" and fell while working in the Food Services Department. (Doc. 66-1, pp. 38-50); (Doc. 66-2, pp. 1-7). Plaintiff alleged that he was poorly classified to work in the kitchen and that Defendants continued a painful course of medical treatment. (Id.). Plaintiff's claim sought compensation for pain and suffering. See (66-1, pp. 43-44).

Because this claim arose from the injuries Plaintiff sustained on March 23, 2010, while working in the Food Services Department, the IACA is the exclusive remedy. See Love, 1991 U.S. Dist. LEXIS 7386 (concluding that because the plaintiff's injuries occurred while he was at

work, whether caused by the prison foreman's negligent actions or by the work he was performing, the plaintiff's only cause of action is under the IACA). Although Plaintiff challenged Defendants' prior decision to clear him to work in Food Services without proper medical shoes to protect his pre-existing foot injury, and the adequacy of his medical care after the incident, the IACA still controls this claim. See Peguero, 2012 U.S. Dist. LEXIS 140304 at *17 (applying the IACA to inmates with pre-existing medical problems); Vasquez, 2013 U.S. Dist. LEXIS 38690 at *22 (stating, "if a prisoner's claim is brought in connection with the subsequent care of the medical staff, rather than the initial injury sustained by working at the prison, courts have recognized that those claims are also barred..." under the FTCA). Regardless of whether Plaintiff properly exhausted his claim under the IACA, he did not seek compensation for lost wages, nor has he submitted evidence thereof. See 28 C.F.R. §§ 301.101(b), 301.201-205 (allowing recovery for lost wages while the plaintiff is still incarcerated). Further, Plaintiff has not been released from prison. See Vasquez, 2013 U.S. Dist. LEXIS 38690 at *22 (finding that because the plaintiff's release date is not until 2014, he "has not reached the date to file a claim for his injury and any claim in the District Court is premature"), citing 28 C.F.R. 301.303.

Consequently, Plaintiff's claim filed on November 29, 2010, arising from his work-related injury is not cognizable under the FTCA and will be dismissed.

## B.      Claim filed January 25, 2011

The tort claim Plaintiff filed on January 25, 2011, for the alleged denial of medical care for his foot is both unexhausted and without merit.

### 1.      Exhaustion

Defendants assert that before a plaintiff may bring an action under the FTCA, he must first present his claim to the appropriate federal agency and wait for the agency to decide/deny the claim. (Doc. 67, p. 31) (citing 28 U.S.C. § 2675). The January 25, 2011, tort claim was timely denied on July 22, 2011, after the instant action was initiated. (Doc. 66-3, p. 31); see also 28 C.F.R. § 14.2(c) (providing that "the agency shall have six months in which to make a final disposition of the claim"). Defendants argue that Plaintiff was required to bring a new action within six months after the date of mailing of notice that this tort claim had been denied, which he failed to do. (Doc. 67, pp. 33-34). Defendants assert that the tort claim is therefore barred. (Id.), citing Hoffenberg v. Provost, 154 Fed. Appx. 307, 310 (3d Cir. 2005) (affirming the district court's dismissal of an FTCA claim as unexhausted because it was still pending when the plaintiff filed suit). Further, Defendants contend that there is no exception to the FTCA exhaustion requirements merely because the statute of limitations has expired. (Doc. 67, p. 34), citing McNeil v. United States, 508 U.S. 106, 113 (1993) (demanding "strict adherence" to the FTCA's procedural requirements). Defendants cite to this Court's Order granting Plaintiff's motion to amend, which stated:

> While the Court agrees that Defendants' argument [that Plaintiff failed to exhaust the administrative tort process] is an appropriate basis for dismissal, it notes that a denial of Plaintiff's motion to amend to add an FTCA claim at this juncture would unduly prejudice the Plaintiff, as his six month time frame to file a separate action raising an FTCA claim expired on January 24, 2012.

(Doc. 47, p. 5 n.1). Defendants argue that Plaintiff's pro se status does not excuse his obligation to comply with procedural requirements. (Doc. 67, p. 35), citing McNeil, 508 U.S. at 113.

Plaintiff asserts that his motion to amend, filed on August 18, 2011, rendered his tort claim timely filed within the two-year deadline. (Doc. 70, p. 18). He also contends that when

this Court, on February 24, 2012, granted his motion to amend, he did. (Id.).

Initially, this Court finds that Plaintiff confuses the two-year period of limitations, which relates to an agency claim, with the six-month period, which is the deadline to bring a federal lawsuit. Title 28 United States Code section 2401(b) provides:

> [A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Thus, to timely file an FTCA claim, a plaintiff must: (1) commence an administrative tort claim within two years of the date the claim accrues, and (2) file a complaint in the district court within six months of the date the administrative tort claim becomes final. Ricketts v. AW of Unicor, 2009 U.S. Dist. LEXIS 63733, *18 (M.D. Pa. 2009) (Rambo, J.) (citing 28 U.S.C. § 2401(b)). A "claimant must abide by the strict time requisites codified in 28 U.S.C. § 2401(b) or its tort claim under the FTCA will be 'forever barred.'" Wilkerson v. United States, 2012 U.S. Dist. LEXIS 85685, *10-11 (M.D. Pa. 2012) (Nealon, J.) (granting the defendant's motion for summary judgment because although the pro se plaintiff "exhausted his administrative tort claim remedies, he failed to file his civil action within six months after the denial of his tort claim as required by 28 U.S.C. § 2401(b) and his claim is now barred").

"The FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency and the claim has been finally denied." Lightfoot v. United States, 564 F.3d 625, 626-27 (3d Cir. 2009) (citing 28 U.S.C. § 2675(a)); see also Thrower v. United States, 2012 U.S. Dist. LEXIS 120211, *20-21 (M.D. Pa. 2012) (Conner, J.) (granting summary judgment on the claims not first presented to the federal agency). Title 28

United States Code section 2675 states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail....

28 U.S.C. § 2675(a). The final denial requirement is 'jurisdictional and cannot be waived.'" Lightfoot, 564 F.3d at 626-27 (quoting Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971)); Fullman v. United States, 2007 U.S. Dist. LEXIS 57625, *11 (E.D. Pa. 2007) ("Failure to exhaust on the part of the plaintiff is a fatal non-waivable jurisdictional defect.").

Here, it is undisputed that no final denial had been made as to the tort claim filed on January 25, 2011, when Plaintiff initiated this action. Plaintiff's reliance on his motions to amend and to supplement, and on his amended complaint, which were filed after the agency claim was denied, is misplaced. See Hoffenberg, 154 Fed. Appx. at 310 (rejecting the plaintiff's argument that, by amending his complaint after the conclusion of the federal agency proceedings, he had essentially re-filed the action thereby fulfilling the FTCA's exhaustion requirement). "The filing of an amended complaint does not cure the defect" of initiating suit prior to a final decision in the administrative remedy process. Brown v. Hendershot, 2006 U.S. Dist. LEXIS 66933, *9-10 (M.D. Pa. 2006) (Munley, J.) (dismissing the FTCA claims). Section 2401(b) states that a tort claim is forever barred "unless action is **begun** within six months after ... final denial of the claim by the agency...." 28 U.S.C. § 2401(b) (emphasis added). Similarly, section 2675(a) provides that an "action shall not be **instituted** ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally

denied by the agency." 28 U.S.C. § 2675(a) (emphasis added). The United States Supreme Court, in deciding the timeliness of an FTCA claim, held that "the normal interpretation of the word 'institute' is synonymous with the words 'begin' and 'commence'" and that the "most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." McNeil, 508 U.S. at 112. The instant action began on March 16, 2011, when the original complaint was filed, not when amendments to that complaint were made. See Hoffenberg, 154 Fed. Appx. at 310 (holding, "the date of the amended complaint cannot serve as the date the federal suit was 'instituted'"), citing McNeil, 508 U.S. at 111-12. Plaintiff's FTCA claim regarding his medical care is therefore unexhausted.

The six month FTCA statute of limitations may be equitably tolled under limited circumstances; however, a "garden variety claim of excusable neglect" is insufficient. Forman v. United States, 1999 U.S. Dist. LEXIS 15391, *40 (E.D. Pa. 1999) (refusing to toll the limitations period because there was no affirmative misconduct by the federal agency and nothing extraordinary about the plaintiff's failure to understand the administrative exhaustion requirements of the FTCA). McNeil held that although the pleadings of pro se prisoners are to be liberally construed, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil, 508 U.S. at 113. McNeil concluded that the district court properly dismissed the pro se plaintiff's FTCA suit for failure to exhaust. Id.

Accordingly, Plaintiff's FTCA claim filed on January 25, 2011, regarding improper medical care is unexhausted and barred.

## 2. Certificate of Merit

Defendants argue that if this Court does not dismiss Plaintiff's FTCA claim for failure to exhaust, it should be dismissed because Plaintiff failed to file the requisite COM. (Doc. 67, p. 38) (quoting PA. R. CIV. P. 1042.3(a)). Defendants state that the COM requirement of Rule 1042.3 applies to cases in federal court, Lopez v. Brady, 2008 U.S. Dist. LEXIS 73759 (M.D. Pa. 2008) (McClure, J.), and that this issue may be raised in a motion to dismiss, Weaver v. University of Pittsburgh Med. Ctr., 2008 U.S. Dist. LEXIS 57988, *4 (W.D. Pa. 2008). (Doc. 67, pp. 39-40). Defendants claim that Plaintiff "needs expert testimony to support his allegation that the United States negligently breached its duty to him, and that the negligent breach was the proximate cause of his injuries." (Id. at p. 41).

Plaintiff asserts that when he filed an amended complaint, he also asserted jurisdiction under the ordinary negligence standard of the FTCA, which does not require a COM. (Doc. 70, p. 19). Plaintiff argues that the Third Circuit Court of Appeals held that the state's procedural device of a judgment of non pros, whereby a claim may be involuntarily dismissed for a plaintiff's failure to file a COM, does not exist in the federal system and that Defendant Buschman and other medical personnel at USP-Allenwood work for the United States. (Id.), citing Weaver v. Univ. of Pittsburgh Med. Ctr., 2008 U.S. Dist. LEXIS 57988 (W.D. Pa. 2008). Plaintiff also suggests that Weaver limited the COM requirement to cases alleging corporate negligence on the part of medical providers other than individual doctors. (Id.).

Plaintiff states that he does not need a COM and that "the courts informed [him] that this case should not need expert testomony [sic]." (Doc. 70, p. 20). He cites a case in which the court determined that the plaintiff made a prima facie case of medical malpractice with only one

expert report. (Id.), citing Miller v. Hoffman, 1999 U.S. Dist. LEXIS 9275 (E.D. Pa. 1999).[16] Additionally, Plaintiff asks this Court to allow Doctor Ball's recommendation for tendon lengthening surgery to act as a COM because, as an incarcerated inmate, he was unable to go to an outside doctor for a COM. (Doc. 70, p. 20).

Defendants dispute Plaintiff's argument that his claims sound in ordinary negligence. (Doc. 74, p. 13), citing Santee v. United States of America, Civil No. 3:07-2207 (M.D. Pa. May 16, 2012) (Doc. 122, p. 24) (Caputo, J.) (citing Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007) ("A complaint 'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment.'"), quoting Ditch v. Waynesboro Hosp., 917 A.2d 317, 323 (Pa. Super. Ct. 2007)). Defendants argue that Plaintiff makes repeated references to the inadequacy of Defendants' medical decisions indicating a clear intent to bring a medical malpractice claim and his allegation that his claims are ordinary negligence cannot shield him from the COM requirement. (Id.).

Next, Defendants assert that Defendant Buschman's letter and the recommendation from Dr. Ball in a portion of Plaintiff's medical record do not satisfy the COM requirement. (Doc. 74, pp. 14-15) (citing PA. R. CIV. P. 1042.3). Defendants submit that Pennsylvania Rule of Civil Procedure 1042.3 requires an unrepresented plaintiff to file a certificate of merit within sixty days of filing the complaint. (Id.). Defendants state:

> A certificate of merit consists of a statement by a licensed professional that a
> reasonable probability exists "that the care, skill or knowledge exercised or

---

16. Miller is distinguishable because although the court allowed the plaintiff to rely on only one expert report, the court concluded that the report established the required elements of a COM: "(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." See Miller, 1999 U.S. Dist. LEXIS 9275 at *25-27.

exhibited in the treatment. . . that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm."

(Id.) (quoting PA. R. CIV. P. 1042.3). Defendants argue that the FTCA claim should be dismissed because the Plaintiff's submissions do not satisfy the COM requirements.

Importantly, Plaintiff's FTCA claim regarding his medical care will be dismissed for Plaintiff's failure to exhaust, thereby mooting the COM issue. Nevertheless, this Court finds that the FTCA claim is not properly supported by a COM and subject to dismissal.

"It is well-recognized that to pursue a medical negligence/malpractice claim in the federal courts in Pennsylvania, a plaintiff must file a COM pursuant to [Rule] 1042.3(a)(1)." Michtavi v. Scism, 2013 U.S. Dist. LEXIS 21580, *10 (M.D. Pa. 2013) (Jones, J.) (dismissing the plaintiff's "FTCA claims for medical negligence/malpractice for failure to file a COM"), citing Iwanejko v. Cohen & Grigsby, P.C., 249 Fed. Appx. 938, 944 (3d Cir. 2007). "If a plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, the proper procedure in federal practice is to file a motion ... to dismiss...." Paige v. Holtzapple, 2009 U.S. Dist. LEXIS 73624, *7 (M.D. Pa. 2009) (Conner, J.); Weaver, 2008 U.S. Dist. LEXIS 57988 at *4, *12 (stating that the COM requirement of Rule 1042.3 applies to cases in federal court and is properly the subject of a motion to dismiss).[17] Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

In any action based upon an allegation that a licensed professional deviated from

17. Plaintiff misinterprets Weaver's discussion of corporate negligence. See (Doc. 70, p. 19). The Court did not conclude that no COM is required for an individual doctor; rather, the Court explained the different COM requirements to hold a corporation vicariously liable for the acts of its employees and/or to hold the corporation directly liable. See Weaver, 2008 U.S. Dist. LEXIS 57988, *10-27.

an acceptable professional standard, ... the plaintiff if not represented shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the ... party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a).

Plaintiff's argument that he does not need to file a COM because he is making an ordinary negligence claim is contradicted by his pleadings. This Court finds that Plaintiff's medical claims are not within the knowledge of lay persons given that several trained medical professionals reached different opinions as to the source of Plaintiff's foot problem and the appropriate course of treatment. See Pitera v. United States, 2010 U.S. Dist. LEXIS 58255, *21 (M.D. Pa. 2010) (Blewitt, M.J.) (concluding that the medical malpractice claims are not within the knowledge of lay persons thereby requiring expert testimony to assist the fact finder), complaint dismissed by, 2010 U.S. Dist. LEXIS 58254 (Caldwell, J.); Paige, 2009 U.S. Dist. LEXIS 73624 at *10-11 ("Where the conduct at issue constituted an integral part of rendering medical treatment, and involved diagnosis, care, and treatment by a licensed professional, ...the action is one that is characterized as a professional negligence action requiring expert testimony."). Additionally, Rule 1042.3 "applies equally to both pro se and represented Plaintiffs." Michtavi v. Scism, 2013 U.S. Dist. LEXIS 21580, *9-10 (M.D. Pa. 2013) (Jones, J.) (rejecting the plaintiff's argument that "because he is a pro se incarcerated litigant, he has no

access to an independent medical expert to provide a COM for him"), citing Hodge v. United States, 2009 U.S. Dist. LEXIS 78146 (M.D. Pa. 2009); Maruca v. Hynick, 2007 U.S. Dist. LEXIS 13302 (M.D. Pa. 2007) (noting that Rule 1042.3(a) expressly requires that a pro se plaintiff file a COM). Plaintiff asks this Court to allow the letter from Defendant Buschman and medical notation from Dr. Ball serve as a COM; however, these documents do not satisfy the requirements of Rule 1042.3(a). See Hodge, 2009 U.S. Dist. LEXIS 78146 at *19 (rejecting the pro se plaintiff's attempt to use excerpts from a medical book as a COM). Additionally, it has been more than a year since the amended complaint was filed and Plaintiff has made no attempt to file a COM. See Maruca, 2007 U.S. Dist. LEXIS 13302 at *6-7 (dismissing the medical negligence claims because approximately ten (10) months passed since the plaintiff filed an amended complaint and had yet to file a COM).

Had this Court not determined that Plaintiff's FTCA claim should be dismissed for failure to exhaust, it would nevertheless be dismissed for his failure to file a COM.

## III. Breach of Duty to Protect

Plaintiff asserts a claim for the negligent failure to protect based on substantially the same allegations as his deliberate indifference claim. See Glatts v. Lockett, 2011 U.S. Dist. LEXIS 19379, *11-12 n.3 (W.D. Pa. 2011) (finding that the plaintiff's " so-called 'failure to protect' count was nothing more than an Eighth Amendment deliberate indifference claim, and considering the plaintiff's inadequate medical care and breach of duty to protect claim together); (Doc. 49, pp. 43-44). To this extent, and for the reasons previously set forth denying Plaintiff's Eighth Amendment claim, summary judgment will be granted on the failure to protect claim. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (To state a claim "based on a failure to prevent

harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official was deliberately indifferent to the inmate's health or safety).

To the extent this claim is based on negligence[18], see Lopez v. Brady, 2008 U.S. Dist. LEXIS 73759, *2 n.2 (M.D. Pa. 2008) (McClure, J.) ("The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates."), this Court has determined that Plaintiff failed to exhaust his FTCA claim. Accordingly, Plaintiff's negligent failure to protect claim is also unexhausted and will be dismissed.

As Plaintiff's claim surrounds Defendants' alleged failure to protect him by improperly assigning him to work in the Food Services department without proper medical shoes, the exclusive remedy is the IACA. See Peguero, 2012 U.S. Dist. LEXIS 140304 at *15-17 (holding that the plaintiff's claim that the defendants failed to protect him while working at his prison job is cognizable under the IACA). As discussed, an IACA claim is premature.

**Conclusion**

Plaintiff, proceeding in forma pauperis, was entitled to rely on the United States Marshal to make proper service on Defendant PHSP. Therefore, Defendants request to dismiss pursuant to Rule 4 will be denied.

Defendant PHSP and Defendant United States will be dismissed from Plaintiff's Bivens claim because they are not "persons" within the meaning of Section 1983.

Plaintiff's claim for damages against Defendants Miller, Santos, Nicklin, Lappin,

---

18. As previously discussed, this Court finds that Plaintiff's claim sounds in medical malpractice, not simple negligence, and a COM is required.

Holtzapple, Craig, Bennett-Meehan, and Schaffer, who are sued only in their official capacities, is barred by the Eleventh Amendment. This Court finds that allowing Plaintiff leave to amend to name these Defendants in their individual capacities would be futile and they will be dismissed entirely from this case. The doctrine of sovereign immunity also demands dismissal of the official capacity claims against Defendants Buschman and Potope.

Plaintiff failed to exhaust his retaliation claim against Defendant Potope for filing a false incident report because Plaintiff did not file any administrative remedies in this regard. Further, because the report was dismissed, Plaintiff suffered no adverse action. Plaintiff also failed to file a grievance claiming that Defendants Potope and/or Holtzapple retaliated against him with threats and/or verbal abuse, nor is such conduct actionable retaliation. As to Plaintiff's retaliation claim that he was fired from his Food Services job for filing a grievance about his workplace injury, his grievance failed to name Defendants Potope or Craig. Plaintiff did, however, fully exhaust this claim against Defendant Schaffer. Nevertheless, given the five (5) week delay between the protected conduct and the adverse action, and in the absence of any other evidence establishing a causal link, this Court finds that Plaintiff failed to show a causal connection to support his retaliation claim.

Since his arrival, Plaintiff was continuously treated for his medical issues at USP-Allenwood. After his first medical visit, special shoes were ordered to help Plaintiff's foot problems. After a few months, Plaintiff was sent to an orthotics specialist and fitted for a leg brace. Defendants made adjustments to the brace, as needed, but after six months of use determined that Plaintiff needed a surgery consult. The following month, Plaintiff was evaluated by Dr. Ball and recommended to receive tendon lengthening surgery. Surgery was performed

61

two months later. Afterwards, Plaintiff received physical therapy for five months and numerous follow-up examinations. In September, 2011, Plaintiff was approved for a general surgery consultation because of his ongoing foot issues. Dr. Albright evaluated Plaintiff and ordered additional scans. Dr. Albright did not recommend additional surgery but thought more physical therapy would be helpful. Plaintiff had a physical therapy evaluation and additional therapy sessions were scheduled. In January, 2012, Plaintiff was fitted for a new leg brace. Throughout his time at USP- Allenwood, Plaintiff was also seen regularly in the clinic and was issued several new pairs of medical shoes. After reviewing the medical records, it is apparent from the continuous medical attention that Plaintiff's constitutional rights were not violated. There is no evidence that Defendants acted deliberately indifferent to Plaintiff's medical needs. Plaintiff's claims that he should have received surgery earlier amount to nothing more than a mere disagreement with the treatment received and do not support Eighth Amendment liability.

Defendants Bennett-Meehan and Craig were employees of PHSP at the time of the alleged violations and therefore cannot be sued in their official or personal capacities under Bivens. They are absolutely immune from suit pursuant to the Public Health Service Act and will be dismissed.

Because Plaintiff has failed to establish a constitutional violation, Defendants are protected from liability by qualified immunity.

Plaintiff's agency claim filed on November 29, 2010, arose from a work-related injury and is not cognizable under the FTCA. Plaintiff's exclusive remedy is a claim pursuant to the IACA. Regardless of the possibility that this claim is unexhausted, the Act offers no relief because Plaintiff does not seek compensation for lost wages and has not yet been released from

prison. Accordingly, this claim will be dismissed.

As to the tort claim filed on January 25, 2011, for improper medical care, Plaintiff initiated the instant action prior to a final agency decision and therefore failed to exhaust administrative remedies on this FTCA claim. The filing of his amended complaint after the agency's denial did not cure Plaintiff's failure to exhaust, nor can his pro se status excuse the defect. Plaintiff's FTCA claim regarding inadequate medical care will be dismissed for failure to exhaust. Moreover, this claim sounds in medical malpractice, not ordinary negligence, and Plaintiff's failure to file a COM in compliance with Pennsylvania Rule of Civil Procedure 1042.3(a) warrants its dismissal.

Plaintiff's failure to protect claim will be denied. The allegations supporting this claim are construed as an Eighth Amendment claim, to which summary judgment will be granted for the same reasons as Plaintiff's deliberate indifference claim. To the extent the failure to protect claim is based on negligence, Plaintiff has failed to exhaust a claim under the FTCA and a claim under the IACA is premature.

Defendants' motion for summary judgment will be granted.

A separate Order will be issued.

**Date:** March 28, 2013

United States District Judge

63